# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

LYDIA BUCHANAN                                                                    PLAINTIFF

VS.                                          CAUSE NO. 1:08CV1299LG-RHW

GULFPORT POLICE DEPARTMENT; CITY
OF GULFPORT; MAYOR BRENT WARR,
officially and in his individual capacity; CHIEF
ALAN WEATHERFORD, officially and in his
individual capacity; GARY HOLLIMON, City
Council President, officially and in his individual
capacity; JOHN KELLY, Chief Administrative
Officer, City of Gulfport, officially and in
his individual capacity; DETECTIVE LT. CRAIG
PETERSON, officially and in his individual
capacity; OFFICER PAUL PODLIN, officially
and in his individual capacity; OFFICER JOSEPH
WUEST, officially and in his individual capacity;
OFFICER JASON BRANT, officially and in his
individual capacity; OFFICER RYAN STACHURA,
officially and in his individual capacity; and JOHN
AND JANE DOES, A-Z, also in their official and
individual capacity                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter came before the Court on the following Motions:

1.  Motion for Partial Summary Judgment on the Issue of Liability of

    Defendants Podlin, Wuest, and Stachura as to the 42 U.S.C.§ 1983 and

    Pendent State Law Claims [Doc. #279];

2.  Motion for Partial Summary Judgment on the Issue of Liability of

    Defendants Brandt and Petersen in Their Individual Capacities and

    Pendent State Law Claims [Doc. #281];

3.      Motion for Partial Summary Judgment on the Claim for Punitive Damages of Defendants Podlin, Wuest, Stachura, Brandt, and Petersen in Their Individual Capacities [Doc. #283]; and

4.      Motion to Dismiss pursuant to Fed. R. Civ. P. 56 or Other Grounds of Defendants Weatherford, Warr, Hollimon, and Kelly [Doc. #285].

The Court has reviewed these Motions and the related pleadings in the light of the record as it exists at this time.  For the reasons more fully set out below, this Court finds that there are no genuine issues of material fact that support Plaintiff's claims and, therefore, that the Motions should be granted and the claims dismissed.

The standard for the entry of summary judgment comes from Fed. R. Civ. P. 56(a), which requires its entry "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is appropriate "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

This case is based on a series of events that occurred on the night of July 5, 2007, involving Robert Lee Buchanan and officers of the Gulfport, Mississippi,

Police Department.[1]  Essentially, Buchanan was observed by Gulfport Police Officers Podlin, Wuest, and Brandt standing in or near Highway 49 in Gulfport, Mississippi.  According to the officers, he was swinging a baseball bat at traffic in the Highway; Plaintiff denies this.  Podlin unholstered his taser, Wuest unholstered his pistol, and they both approached Buchanan.  Stachura arrived almost immediately thereafter and pulled out his taser.

The officers asked Buchanan several times to put the bat down, which he eventually did, but he failed to follow the instructions to move away from it. Seconds later, believing that Buchanan was reaching for the bat, Podlin and Stachura tased Buchanan.  At that point, Buchanan was about five to seven yards from Officer Podlin.  The tasing did not incapacitate him, and the officers saw him pick up the bat, raise it over his head, and advance toward Podlin.  He advanced to within two to five yards of the officer.[2]  Podlin and Wuest shot Buchanan, who was seriously injured.  The shooting occurred at about 11:32 p.m.  By 11:52 p.m., Buchanan was reported to be in an ambulance.  A hospital record shows that Buchanan was in the emergency room by midnight.

Buchanan was later charged with both disorderly conduct, related to the activity that prompted the officers to stop, and with aggravated assault on a police

---

[1]On August 25, 2011, the Chancery Court of Adams County, Mississippi, appointed Lydia Buchanan conservator of the person and estate of Robert Lee Buchanan upon a finding of "mental incapacity and infirmities".

[2]One of the other officers described it as "close enough to hit him."

officer. He was convicted of disorderly conduct in municipal court, but appealed to county court, where the charge was ultimately dismissed. At his trial on aggravated assault charges, the court granted jury instructions on the lesser included offenses of simple assault on a police officer and simple assault. The jury found Buchanan guilty of simple assault, and that conviction was affirmed on appeal. *Buchanan v. State*, No. 2010-KM-00695-COA, 2011 WL 4357745 (Miss. Ct. App. Sept. 20, 2011); *cert. denied*, No. 2010-CT-695-SCT (Miss. Mar. 29, 2012).

Defendants are the three officers involved in the shooting and tasing, another officer who was at the scene, the detective who took statements from those officers, the Chief of Police, the Gulfport Police Department, the City of Gulfport, and the City's Mayor, Council President, and Chief Administrative Officer. Defendants filed two Motions for Summary Judgment earlier in these proceedings. The first Motion was granted in part and denied in part, and the second Motion was denied *in toto*. The claims that survived those Motions are: excessive force, deliberate indifference to medical needs, and related supervisor liability, all under 42 U.S.C. § 1983, and assault and battery, civil conspiracy, breach of a non-delegable duty, intentional infliction of emotional distress,[3] and slander under state law. In a recent

---

[3]Plaintiff also alleged in her Complaint a separate count for the "common-law tort of outrage." In Mississippi, the tort is considered equivalent to the claim of intentional infliction of emotional distress. *Jones v. Jackson State Univ.*, No. 3:07cv72, 2008 WL 682411 at *5 (S.D. Miss. 2008); *Bombadier Capital, Inc. v. Royer Homes*, No. 1:04cv884, 2006 WL 1328907 at *3 n.2 (S.D. Miss. May 15, 2006).

Memorandum Opinion, this Court denied Plaintiff's Motion for Summary Judgment on her federal claim of excessive force and the state claim of assault and battery.

In their Second Motion for Summary Judgment, Defendants argued that they were entitled to summary judgment based upon the principles enunciated in *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* doctrine, or the "favorable termination rule," bars a federal claim for damages if judgment in the plaintiff's favor would necessarily imply the invalidity of a conviction or sentence based upon the same set of facts, unless that conviction or sentence has already been invalidated. The basis for their argument was Buchanan's conviction of simple assault. Citing *Ballard v. Burton*, 444 F.3d 391, 400 (5th Cir. 2006), this Court held that a finding in Buchanan's favor would not invalidate his conviction of simple assault, and, therefore, that summary judgment was not appropriate.

Attached to the present Motion is a complete transcript of Buchanan's assault trial--a document that was not available to the Court when it considered the earlier Motions. Additionally, the Court now has the benefit of the Mississippi Court of Appeals' written opinion affirming the assault conviction. Based on these more recent documents, the Court is inclined to reconsider its earlier judgment on the applicability of the *Heck* doctrine.

At Buchanan's trial on the assault charge, the jury heard testimony from all three of the officers who actually confronted Buchanan – Podlin, Wuest, and Stachura, as well as the officer who remained in the unmarked police vehicle, Brandt. These officers testified to the events summarized above. Additionally, two

citizens who had observed the confrontation, Richard Bourland and Mary Helen Jennings, testified about their view of the events. Bourland testified that Buchanan was "real defiant." He stated, "I see the red lasers on him, and then all of a sudden he just puts the bat behind his head and, you know, goes towards the first officer, and that's when I heard the shots . . . ." Jennings testified that Buchanan looked angry and was swinging his bat at the policemen, who were "kind of jumping back as he was swinging . . . . I remember seeing him striking at them and them kind of trying to get out of the way, and then the next thing I knew I heard some loud popping sounds." The jury was also shown the videotaped recordings taken by the officers' tasers. Defense counsel cross-examined the witnesses as to their recollections and particularly questioned the police witnesses about inconsistencies between their testimony and their earlier statements. The only witness called by the defense was the detective who took the officers' statements.

The jury was instructed on three offenses: aggravated assault on a police officer, simple assault on a police officer, and misdemeanor simple assault. The instructions were given to the jury in that order, with each offense to be considered only after the jury failed to find Buchanan guilty of the preceding offense. The instruction on the offense of simple assault read as follows:

> The Court instructs the Jury that if you find that the State has failed to prove all of the essential elements of the [crime of Aggravated Assault on a Peace Officer and] the crime of Simple Assault on a Peace Officer, you may consider another lesser charge of Misdemeanor Simple Assault.

Therefore, if you find the Defendant, ROBERT LEE BUCHANAN, not guilty of Simple Assault on a Peace Officer, then you shall proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Misdemeanor Simple Assault.

If you find from the evidence beyond a reasonable doubt that

(1) On or about July 5, 2007, in the First Judicial District of Harrison County, Mississippi;

(2) The Defendant, ROBERT LEE BUCHANAN, did knowingly, purposely or recklessly

(3) attempt to cause bodily injury to Paul Podlin

(4) not in necessary self-defense

then you shall find the Defendant, ROBERT LEE BUCHANAN, guilty of Misdemeanor Simple Assault.

*Buchanan*, 2011 WL 4357745 at *9 (Irving, P.J., dissenting). The instruction on aggravated assault on a peace officer contained these elements, but also would have required the jury to find that the assault attempt was made "with a deadly weapon or other means likely to produce death or serious bodily harm, to-wit: by swinging a baseball bat, a deadly weapon . . . at a time when Paul Podlin was a law enforcement officer . . . acting within the scope of his duty and office . . . ." The instruction on simple assault on a peace officer required the jury to find that Buchanan "did . . . attempt by physical menace to put Paul Podlin in fear of imminent serious bodily injury . . . by charging at the said Paul Podlin in a threatening manner . . . at a time when the said Paul Podlin was a law enforcement officer . . .acting within the scope of his duty and office . . . ."

In closing argument, the prosecution told the jury that the defense would argue "that if he attempted to swing this bat that it was in necessary self-defense, more specifically that it was in defense of an unlawful arrest . . . Sergeant Podlin and his fellow officers stopping because somebody is swinging a bat." The transcript reflects that defense counsel did argue that the officers "had no reason to stop him to start with." He added that Buchanan was not being aggressive when he was tased. "And he had no choice but to try to defend himself."

Defense counsel also interjected doubt that Buchanan understood that Podlin and Wuest were actually police officers, saying, "And keep in mind, one of the questions, what kind of uniforms did you have on. You know, how did he know that you were police officers." Playing the taser video to the jurors, he argued that, when Stachura drove up in his patrol car, Buchanan was seen looking at it. "When he sees that there is actually a police officer there, what does he do? He drops the bat." Later, counsel told the jury to look at the tape again, saying, "Let's just watch what happens. He puts the bat down. Stachura is just getting there. He's the one in the regular police uniform. They tell him to get over, and he moves over, and they shot him."

His co-counsel disagreed with the argument that the police should not have stopped Buchanan, "If they think that they saw something that may be dangerous to the public, okay, go take a look at it." He agreed, however, that Buchanan should not have been tased, since he did not have the bat in his hand at the time. His

emphasis was on the instruction "that says a person has a right to resist an unlawful arrest." Buchanan's attorney continued:

> When did the arrest occur? The arrest occurred when they tased him for no reason. What if he had not put his hand on the bat? What if they talked to him some more. Maybe they could have talked him down. We don't know. We never got the opportunity to find out because he was tased and shot.

The jury found Buchanan guilty of simple assault, meaning that the jury found that Buchanan attempted to cause bodily injury to Officer Podlin, and it also found that Buchanan did not act in necessary self defense. The inexorable conclusions are that the jury found that the tasing did not amount to an unlawful arrest and that Buchanan was advancing toward Podlin with the baseball bat raised when he was shot by the officers–a review of the trial transcript shows that the assault conviction could not have been based upon anything else.

The *Ballard* decision relied upon by Buchanan does not control the outcome of this case, as it was a limited holding based upon the specific facts of that case. *Ballard*, 444 F.3d at 401 (finding that a Ninth Circuit opinion denying summary judgment based on *Heck* is "applicable to the unique factual scenario at bar.") That "unique factual scenario" involved a conviction of assault on one officer that occurred prior to the arrival of the officer who actually shot the plaintiff. *Ballard* was, therefore, distinguishable from earlier Fifth Circuit precedent applying *Heck* to situations where the plaintiff assaulted the officer who actually used force against him. "By contrast, Ballard's conviction was for assault, by physical menace, on an officer who is not a defendant in his § 1983 claim." *Id.* at 399. Because the

assault and the force were distinct, both as to time and victim, a finding of excessive force would not necessarily invalidate the assault conviction.

Here, on the other hand, Buchanan has been convicted of assault on an officer who was one of the two who shot him. A jury has already found that Buchanan attempted bodily injury on Officer Podlin by raising a baseball bat and advancing toward him, after being tased twice. Granted, the jury failed to convict Buchanan of assault on a peace officer – either aggravated or simple. The Mississippi Court of Appeals ascribed two meanings to the verdict – that the jury found that Buchanan's baseball bat was not a deadly weapon or that the jury found that Buchanan did not know that Podlin was a law enforcement officer. *Buchanan v. State*, 2011 WL 4357745 at *4-6. ("Officers Podlin, West [sic], and Brandt did not have on their usual police uniforms . . . [and] they arrived on the scene in an unmarked police vehicle.") Regardless of the jury's actual thought process, the manner of the assault cannot be questioned–Buchanan raised a baseball bat above his head and charged Podlin at close range.

As the Fifth Circuit has recognized, the determination of whether a § 1983 claim is barred by *Heck*, "is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). A conviction of assault will not *always* be called into question by a finding of excessive force under § 1983. *See, e.g., Garrison v. Porch*, 376 F. App'x 274, 278-79

-10-

(3rd Cir. 2010) (simple assault occurred when suspect put his hands up aggressively; excessive force occurred when officer grabbed the suspect, forced him to the ground, and then jumped on his back, fracturing his spine); *Dyer v. Lee*, 488 F.3d 876, 882 (11th Cir. 2007) (simple assault was committed by suspect's kicking an officer while suspect was being placed under arrest; excessive force was used after she had been transported and removed from patrol car); *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006) (plaintiff convicted of assaulting officers with his vehicle not barred by *Heck* if his claim of excessive force arose after his vehicle was boxed in by police cars, but was barred by judicial estoppel as to the facts admitted in his guilty plea); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (plaintiff convicted of assaulting police with his car not barred by *Heck* if excessive force occurred after he exited his vehicle); *but see Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005) ("We agree with the magistrate judge that success on Cummings' excessive force claim would necessarily imply the invalidity of his state [misdemeanor] assault conviction. The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined.").

Here, a jury found that Buchanan purposely attempted to cause bodily harm to Officer Podlin by advancing on him with an upraised bat, and not in self-defense. As stated earlier, *Heck* is implicated where the excessive force claim requires proof of a fact inconsistent with the conviction. Buchanan argues that he was not

breaking any laws when excessive force was used on him, that the tasing and shooting were without justifiable provocation, and that the officers specifically intended to violate his rights. Buchanan argues:

> Defendants allege Mr. Buchanan "moved rapidly to the bat, retrieved it, raised it above his head, and lunged toward Sgt. Podlin," charged Podlin "with the baseball bat raised over his head once he had been tased the first time," was "reaching back for the bat," "attempted to grab the bat," "attempted to retrieve the bat" and "was amazingly able to pull the taser leads from his body," despite the fact the actual video footage from the taser weapons shows **none** of these actions.

Pl's Resp. to Defs' Motion for Part. Summ. Judg. 9-10 [Doc. #315]. He also argues that an eyewitness testified by deposition[4] that Buchanan did not pick up the bat and advance toward the officers. According to Buchanan, "the Defendant officers tased Mr. Buchanan after he complied with their orders, unjustifiably shot him afterwards, and then lied repeatedly to cover up the incident . . . ." These allegations are inconsistent with the jury's finding at trial, that Buchanan charged an officer with an upraised bat, and not in self-defense.

The jury in Buchanan's assault case was presented with evidence that Buchanan was approached by officers because he was swinging a bat at traffic; he repeatedly failed to obey orders to put the bat down, he finally put the bat down but refused to move away from it, he was tased after he moved toward the bat, the tasing had no effect on Buchanan, and he was shot after he picked the bat up, raised it over his head, and charged to within a few feet of one of the officers. The

---

[4]This witness, Debra Cherota, did not testify at the assault trial.

jury's verdict of misdemeanor assault was necessarily based on the jury's findings that those events actually occurred.  Buchanan argues here that they never happened.  *Heck* prevents him from doing so.  Moreover, a finding that the officers used excessive force when they shot Buchanan would mean that the officers had no reason to believe that he intended to harm any of them, despite the jury's verdict that he intentionally attempted to so.  A verdict in Buchanan's favor on the shooting, particularly when based upon his allegations in this case, would necessarily call into question the verdict of the Mississippi jury in Buchanan's assault case.  For this reason, *Heck* bars Plaintiff's excessive force claim with regard to the shooting.

Alternatively, Defendants argue that they are immune from suit on this issue because Buchanan's constitutional rights were not violated.  The Court agrees.  The facts established by the state court jury's verdict establish that the officers did not use excessive force when they shot Buchanan.  As the Supreme Court has recognized, the doctrine of collateral estoppel applies when a plaintiff attempts to relitigate, in a federal lawsuit brought under § 1983, issues that were decided against them in state criminal proceedings.  *Allen v. McCurry*, 449 U.S. 90, 104-05 (1980).  This may be so even when the parties in the two actions are not identical. *Id*. at 94-96.  The only absolute requirement is that the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier case.  *Id*. at 95.  Here, Buchanan had counsel at his criminal trial; in fact, he was represented by the same attorneys that represent him in this

case.  Moreover, this case was filed before Buchanan's criminal trial took place; therefore, he had ample incentive to defend the charges there so as to preserve his claims here.  For these reasons, this Court finds that Buchanan had a full and fair opportunity to litigate the issue of whether he assaulted Officer Podlin at his criminal trial.

In applying this doctrine, "[a] federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Hernandez v. City of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Allen*, 449 U.S. at 96.  Under Mississippi law, Buchanan's conviction of simple assault precludes him from re-litigating any of the facts necessary to the jury's verdict, on grounds of collateral estoppel.  *Jordan v. McKenna*, 573 So. 2d 1371, 1376 (Miss. 1990); *see also J.R. v. Malley*, 62 So. 3d 902, 905 (Miss. 2011).  Where a family member of the defendant is substituted in the civil suit, collateral estoppel will still apply.  *Merritt v. Quaker Oats Co.*, 538 F. Supp. 24, 25-26 (5th Cir. 1981).  Mississippi normally applies the "mutuality of parties" requirement to the use of collateral estoppel.  *See Bell v. Texaco, Inc.*, No. 5:09cv192KS-MTP, 2010 WL 5330729 at *2-3 (S.D. Miss. Dec. 21, 2010), and the cases cited therein.  Mississippi does not, however, apply the doctrine where the "prosecuting witness" and the defendant in a criminal case are the parties in a subsequent civil action, holding that sufficient identity of parties exists in that

circumstance. *Jordan*, 573 So. 2d at 1377 (defendant convicted of rape could not argue his innocence in subsequent civil case brought by victim). This case fits within the parameters of *Jordan*. Buchanan was convicted of assaulting Podlin, who is a defendant in this matter. For this reason, the issue of whether Buchanan advanced on Podlin with an upraised baseball bat cannot be re-litigated here.

To succeed on a federal claim of a civil rights violation through the use of excessive force, Plaintiff must show "that [Buchanan] 'suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009). Whether the force used was reasonable is dependent on the facts and circumstances that the officers confronted. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The officers' subjective intent is irrelevant. *Id.* at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."). Where the officer reasonably believes that the suspect "poses a threat of serious harm to the officer or others," the use of deadly force is not unreasonable. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009); *Mace v. City of Palestine*, 333 F.3d 621, 624-25 (5th Cir. 2003) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

The reasonableness of the officer's action is judged objectively, "in light of the circumstances confronting [the officer]." *Id*. (citing *Graham v. Conner*, 490 U.S. 386, 396-97 (1989)); *see also Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012). A suspect does not have to point a weapon at the officer for the officer to reasonably believe that he poses a threat of serious harm. *See e.g., Rockwell v. Brown*, 664 F.3d 985, 992 (5th Cir. 2011) ("[I]n the typical case, it is sufficient that the officer reasonably believed that the suspect posed a threat to the safety of the officer or others.") (citing *Graham*, 490 U.S. at 396); *Mace*, 333 F.3d at 633 (suspect was brandishing a sword when he was shot). Under the circumstances confronting the officers in this case, where a defiant suspect advanced within feet of an officer with an upraised bat, after that suspect had been tased twice to no effect, it cannot be argued that the officers' response was not reasonable. The claims against the officers based upon Buchanan's assertion of excessive force in shooting him must be dismissed, as his constitutional rights were not violated thereby.

Plaintiff also claims that the use of a taser on Buchanan after he had put down the baseball bat amounted to excessive force. The audio recording taken by the officers' tasers reflects that Buchanan was ordered several times to put the bat down. On one of those occasions, an officer said, "Put the bat down, or I'm going to tase you." After Buchanan put the bat down, he was ordered to step away from the bat, which he failed to do. Officer Podlin testified that he asked Buchanan to move away from the bat because he considered it to be a threat to him and to the other officers. According to Podlin, "At this point I deployed my taser because we have

given him ample opportunity to drop the bat and to move away. When he came back up, that was – that was enough. All I needed to do was – he had ignored my commands and my warnings. He has a deadly weapon in his hand, and I deployed my taser." Officer Wuest testified that they wanted to get Buchanan away from the bat because they considered it to be a weapon. "[F]or my personal safety I wouldn't want anyone I was dealing with to be standing right next to a weapon, you know. We want them away from it or maybe even I would take it, you know, secure it somewhere so that we could have a discussion."[5]

Officer Stachura testified at Buchanan's assault trial that Podlin then approached Buchanan to remove the bat from his reach. At that point, Stachura thought Buchanan lowered his arm as if to pick up the bat. Stachura was the second officer to tase Buchanan, after he observed Podlin's taser malfunction. Neither of the two citizens who testified at Buchanan's trial saw what happened at the moment that Buchanan was tased.

Plaintiff argues that use of the tasers on Buchanan amounted, under the circumstances, to excessive force. Defendants argue that it did not and that they

---

[5]In both Podlin's and Wuest's original statements to investigators, they said that Buchanan never put the bat down and that he had it in his hand when he was tased. After seeing the video taken by the tasers, they changed their testimony at trial to reflect that Buchanan had actually put the bat down before he was tased. Defense counsel vigorously cross-examined Podlin and Wuest on this discrepancy. The only witness that Buchanan called during his case was the supervisor who took Podlin's and Wuest's statements, who admitted that they differed from their trial testimony. Buchanan relies heavily on these discrepancies in this case to argue that a jury should decide whether these officers were lying; however, the jury in his criminal case heard about the inconsistencies in the officers' statements, but obviously accepted their trial testimony as truthful.

enjoy qualified immunity from suit on this issue, as with the shooting, because Buchanan's constitutional rights were not violated. Alternatively, they argue that they are immune because their actions were not objectively unreasonable in light of clearly established law at the time of the incident.

This claim is likely also barred by *Heck*. The jury found that Buchanan was not acting in self-defense when he advanced toward Podlin with the bat. They were instructed that a person may use force, even deadly force, to resist an unlawful arrest. Defense counsel told the jury during closing argument, "The arrest occurred when they tased him for no reason." If the jury's finding is construed as a finding that the arrest (tasing) was not unlawful, then a finding in this case that it amounted to excessive force would call into question the legitimacy of the state court verdict.

Alternatively, if the claim is not barred by *Heck*, then the Court must determine whether Defendants can invoke qualified immunity on the issue of Buchanan's tasing. As it did earlier on the claim related to the shooting, the Court must consider whether Defendants violated a constitutional right by tasing Buchanan; if that question is answered affirmatively, the Court must determine whether the right was "clearly established" at the time of the tasing. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). After reviewing the facts of this case and the applicable law, the Court concludes that the tasing was not a constitutional violation. Moreover, even if the tasing had amounted to excessive force, the Court

is of the opinion that the law on the use of tasers in this type of situation was not clearly established at the time of this incident.

A plaintiff claiming excessive force must show: (1) an injury, (2) resulting directly from the excessive force, (3) that was clearly unreasonable. *Fontenot v. Cormier*, 56 F.3d 669, 675 (5th Cir. 1995). As an initial matter, it is not clear that Buchanan suffered more than a *de minimis* injury from the tasing. *See, e.g.*, *Batiste v. Theriot*, 458 F. App'x. 351, 355-56 (5th Cir. 2012) (evidence showed that suspect died from exertion from running from officers, combined with drug ingestion and hereditary traits and not from being tased); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (incidental injuries that occur during an arrest will not support a claim of excessive force). Clearly, Buchanan suffered serious injuries from being shot, but the evidence showed that the tasing had little or no effect on him.

Whether the force was excessive is also questionable. As the Supreme Court has recognized, "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). To succeed on this claim, Buchanan must show that he suffered an injury that resulted from objectively unreasonable force that was clearly excessive to the need. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Excessive force cases based on tasing a suspect or detainee seem to divide themselves fairly neatly into two

categories: (1) those that occur prior to the officers' obtaining control over a suspect, and (2) those that occur after a suspect has been subdued. In the second category, courts have almost uniformly concluded that tasing constitutes excessive force. In the first category, where the suspect is resisting arrest or disobeying the officers' orders, tasing may not be considered excessive force. *See, e.g., McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011) (police serving warrant based on misdemeanors did not use excessive force in tasing a man who was moving toward an open window, even though he died from injuries sustained in his fall from the second floor); *Isom v. Town of Warren, R.I.* , 360 F.3d 7, 12 (1st Cir. 2004) (police did not use excessive force by using pepper spray on suspect who refused to put down an axe, even though suspect's response was to raise the axe and run toward the officers, resulting in his being shot to death); *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1101 (S.D. Ind. 2008) (officers did not use excessive force in tasing a man who was approaching city employees with an upraised board and ignored orders to put it down); *Shulgan v. Noetzel*, No. CV-07-051-JLQ, 2008 WL 1730091 at *11 (E.D. Wash. Apr. 10, 2008) (use of taser not excessive force on suspect who refused to follow officer's verbal commands and continued to move toward him); *Stanley v. City of Baytown, Tex.*, No. Civ. A. H-04-2106, 2005 WL 2757370 at *8 (S.D. Tex. Oct. 25, 2005) (officer did not use excessive force in tasing a man who had just had a seizure, but refused to allow emergency personnel to strap him in the ambulance); *see also Ellis v. State*, 21 So. 3d 669, 671 (Miss. Ct. App. 2009) (no Fourth

Amendment violation where police used taser several times in an attempt to get suspect to spit out bag of cocaine). Given the circumstances of this case, where Buchanan was initially non-compliant, where he was warned that he would be tased if he did not put the bat down, where he ultimately put his baseball bat on the ground, but refused to move out of reach of it, where the officers were in relatively close proximity to Buchanan and had reason to be concerned about his access to a weapon, and where the officers ultimately believed that he was reaching for the bat, this Court is of the opinion that no reasonable juror could find that the use of tasers constituted excessive force. This is so even though Buchanan was tased twice. *Wargo v. Municipality of Monroeville, PA*, 646 F. Supp. 2d 777, 784-85 (W.D. Pa. 2009) (continued use of taser was not excessive force when armed, non-compliant suspect failed to fall to the ground after the first tasing).

Even if the tasing amounted to excessive force, Defendants would be entitled to qualified immunity if their action did not violate clearly established law. The Supreme Court has defined this test as follows: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 650 (1987)). The Court explained further, "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. Courts should not define clearly established law "at a high level of

generality;" the general notion that excessive force violates the Fourth Amendment is not controlling as to whether specific conduct violates clearly established precedent. *Ashcroft*, 131 S. Ct. at 2084.

This event occurred in July 2007. This Court cannot identify any controlling precedent existing at that time that had held that use of a taser on a non-compliant suspect who has not been subdued, and whom police believe is reaching for a weapon, amounts to excessive force. Other jurisdictions reviewing this issue in similar time frames have reached the same result. *Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012) (holding that clearly established law in 2007 did not prevent use of taser on suspect who was on the ground but struggling against being handcuffed); *Mattos v. Agarano*, 661 F.3d 433, 446-47 (9th Cir. 2011) (holding that clearly established law in 2004 did not preclude police from tasing a pregnant woman who was belligerent, screamed at officers, and refused to sign citation; holding that clearly established law in 2006 did not preclude police from tasing a woman who was shot with a taser as she stood between her husband and police who were trying to arrest him); *Bryan v. MacPherson*, 630 F.3d 805, 809 (9th Cir. 2010) (granting qualified immunity where taser was used on driver detained for a seat belt infraction because at the time of the arrest in 2005 there was no Supreme Court or Ninth Circuit decision holding that the use of a taser in dart mode constituted an intermediate level of force); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044-45 (6th Cir. 1992) (holding that clearly established law did not prevent use of taser on suspect only a few feet away with a knife in each hand, particularly when the taser

was used in lieu of lethal force); *Sanders v. City of Dothan*, 671 F. Supp. 2d 1263, 1272 (M.D. Ala. 2009) (holding that clearly established law did not prohibit officer from tasing a secured suspect who repeatedly disobeyed orders to open his mouth to be searched for drugs). In fact, the Court has not found any precedent at all that would clearly establish that the use of tasers on Buchanan amounted to excessive force in this situation. For this reason, as well as the others discussed earlier, Podlin, Stachura, and Wuest are entitled to qualified immunity on the claims related to the tasing.

Buchanan's final federal claim appears in his Complaint, in Count I, "Action for Deprivation of Civil Rights." There, Buchanan claimed that he sustained injuries as the result of excessive force. He concluded that Count by stating that Defendants exhibited, after the shooting, "deliberate indifference to the immediate, grave and serious condition Mr. Buchanan was left in, resulting in 30 days of unconsciousness in the hospital." This claim does not appear to have been aggressively pursued. In their Motions for Summary Judgment, Defendants argue vigorously that excessive force was not used; however, the Court cannot identify a specific argument on this claim. Defendants do, however, argue that summary judgment is appropriate on Buchanan's state law claim of breach of non-delegable fiduciary duty.

Both claims are based on the same allegation, "The Defendants' failure and/or refusal to provide Robert L. Buchanan with prompt, proper, professional, and necessary medical care at a time when the same was absolutely essential

constituted a breach of a non-delegable and/or fiduciary duty to Mr. Buchanan and other persons similarly situated."  In the Motion filed by Podlin, Wuest, and Stachura, they related the following facts:

> The events in question occurred at approximately 11:32 p.m. on July 5, 2007.  Immediately following the events, dispatch was advised, and assistance and ambulance was requested.  In fact, on the taser videos, one of the officers is heard directing Buchanan to lie on the ground and that medical help would be on the way.  Sgt. Greg Goodman with the City of Gulfport Police Department arrived to the scene at 11:34 p.m. and began assisting Buchanan as he is an emergency medical technician.  Shortly thereafter, AMR arrived to the scene at approximately 11:37 p.m., assisted Buchanan, and he was transported from the scene at approximately 11:52 p.m. and arrived to Memorial Hospital at Gulfport at 11:58 p.m. and was in a treatment room by 12:00 a.m.

These allegations are supported by the taser's audio recording of the events after the shooting, as well as by medical records provided by Defendants.  Plaintiff has submitted nothing that would controvert these allegations.  In fact, she makes no argument to support her claim of denial of medical care.

Deliberate indifference to a pretrial detainee's serious medical needs is a due process violation under the Fourth Amendment, actionable under §1983.  *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).  To be successful, the detainee must show that the officer had "the subjective intent to cause harm."  *Id*. at 626.  In *Mace*, after shooting a suspect, officers summoned an ambulance to the scene.  The medical personnel that had arrived attended to the suspect as soon as he was subdued, and the police chief ordered one of the officers to drive the ambulance to the hospital, so that the medical personnel could continue to attend to the suspect.

*Id.* The plaintiff argued that the chief knew that the suspect had serious injuries and that the ambulance did not depart for a significant period of time, waiting for the officer to drive it. Finding no evidence that either the chief or the officer intentionally delayed the departure of the ambulance, the Fifth Circuit affirmed the district court's grant of summary judgment on the issue of deliberate indifference to medical needs. *Id.*

Here, the facts point even more strongly toward a finding in favor of the officers. They summoned medical assistance immediately after the shooting and attempted to calm Buchanan while they waited for the ambulance, so as not to let him exacerbate his injuries. Medical assistance, in the form of an emergency medical technician, arrived in two minutes, and an ambulance arrived within five minutes. Buchanan was at the hospital and in a treatment room less than half an hour after he was shot. Viewing the facts in the light most favorable to Buchanan, no reasonable juror could find that they supported a claim of deliberate indifference or breach of a non-delegable duty on the part of any of the Defendants. For this reason, these claims should also be dismissed. In addition to the dismissal of the federal claims against the individual officers, they must also be dismissed against the municipal defendants. Where there is no underlying constitutional violation, there can be no municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Buchanan's remaining state claims are assault and battery, civil conspiracy, intentional infliction of emotional distress,[6] and slander.  The Mississippi Tort Claims Act immunizes governmental entities and their employees for any act or omission of an employee engaged in activities relating to police or fire protection "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury."  Miss. Code Ann. § 11-46-9(1)(c) (Supp. 2011); *Giles v. Brown*, 962 So. 2d 612, 615-16 (Miss. Ct. App. 2006).  The Mississippi Supreme Court has described "reckless disregard" as a higher standard than gross negligence, but less than intent.  *City of Jackson v. Law*, 65 So. 3d 821, 826 (Miss. 2011).  The term "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'"  *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 995 (Miss. 2003).  Similar to an excessive force claim under § 1983, the determination of whether there was reckless disregard will depend upon the circumstances surrounding the incident that caused the injury.  *Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. Ct. App. 2008).  Additionally, if a defendant raises, as a defense, the allegation that the plaintiff was engaged in criminal activity, that activity must have "some causal nexus to the wrongdoing of the tortfeasor."  *City of Jackson v. Powell*, 917 So. 2d 59, 69-70 (Miss.

---

[6]Plaintiff also alleged in her Complaint a separate count for the "common-law tort of outrage."  In Mississippi, the tort is considered equivalent to the claim of intentional infliction of emotional distress.  *Jones v. Jackson State Univ.*, No. 3:07cv72, 2008 WL 682411 at *5 (S.D. Miss. 2008); *Bombadier Capital, Inc. v. Royer Homes*, No. 1:04cv884, 2006 WL 1328907 at *3 n.2 (S.D. Miss. May 15, 2006).

2005). The criminal activity must occur contemporaneously with the injury; it is not sufficient that his earlier conduct was criminal. *City of Jackson v. Calcote*, 910 So. 2d 1103, 1111 (Miss. Ct. App. 2005).

Here, the Defendants argue that Buchanan was engaged in criminal activity at the time of his confrontation with the officers. They base their argument on his conviction (later dismissed) of disorderly conduct and his conviction (ultimately affirmed) of simple assault. With regard to the disorderly conduct conviction, it is not necessary for the Court to consider whether a conviction later dismissed is sufficient proof of criminal activity, since this activity and Buchanan's injury were not contemporaneous. According to the officers, the disorderly conduct was Buchanan's swinging his bat at traffic, which precipitated the investigation. By the time that Buchanan was tased, he was no longer engaged in that activity.

Buchanan was also convicted of simple assault, based upon his confrontation with the officers. The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires this Court to "give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 81 (1984). The assault was occurring at precisely the moment that Buchanan was shot, so the conviction conclusively establishes that Buchanan cannot recover on an assault claim based on the shooting, because he was engaged in criminal activity at the time.

Plaintiff's state claim of assault, insofar as it is based on the tasing, must also fail, as no reasonable juror could find reckless disregard for Buchanan's safety.

The Mississippi Supreme Court has defined "reckless disregard" as "embrac[ing] willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999). It has also characterized reckless disregard as intentionally committing "an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000). The nature of the act "usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Maye v. Pearl River Cnty.*, 758 So. 2d 391, 394 (Miss. 1999) (quoting *Orthopedic & Sports Injury Clinic*, 922 F.2d 220, 224 n.3 (5th Cir. 1991). The standard is an objective one. *Powell*, 917 So. 2d at 72.

Based on this standard, a police officer who shoved a suspect's face into a concrete floor after he obeyed an order to lie down, then pressed his fingers into the suspect's eyes and rolled his face back and forth, breaking three of his front teeth, showed reckless disregard of the suspect's safety and well-being. *Calcote*, 910 So. 2d at 1110. Similarly, officers who beat a suspect after he was lying on the ground handcuffed exhibited reckless disregard for his safety, thereby denying them immunity. *Powell*, 917 So. 2d at 72. In contrast, where a police officer grabbed a suspect in a bear hug to prevent him from reaching into his pockets, where his weapon accidentally discharged during the scuffle, and where the officer sprayed

him with a chemical agent when he resisted being handcuffed, there was no reckless disregard for the suspect's safety. *Scott v. City of Goodman*, 997 So. 2d 270, 277 (Miss. Ct. App. 2008) ("Officer William's conduct was a reasonable reaction to what he perceived to be a potentially dangerous situation.").

Here, the officers who were involved in the tasing, as well as the other officer present, all testified at Buchanan's assault trial. The jury apparently believed their testimony regarding the incident, since it found that Buchanan was not acting in self-defense when he charged the officers with the baseball bat. The officers testified, and the video shows, that Buchanan refused several orders to put down his bat, then refused several orders to move away from it. He was warned that he would be tased for not obeying the officers' orders, and he was perceived by the officers as aggressive. The officers wanted him to get away from the bat, so that he could not use it as a weapon against them. Podlin testified that he thought Buchanan moved toward the bat, and that is the reason that he was tased. Wuest also saw Buchanan make a "movement" toward the bat. Stachura said that Podlin was moving toward the bat, to get it out of Buchanan's reach, when Buchanan "dropped his arm and lowered down as if he was reaching to pick up the bat." Stachura used his taser only after he saw that Podlin's did not incapacitate Buchanan.

Under the circumstances of this case, this Court is of the opinion that no reasonable juror could find that Podlin or Stachura displayed reckless disregard for Buchanan's safety when they tased him. It was obviously not done maliciously or

sadistically, but from the belief that a defiant suspect was reaching for a weapon that he had previously resisted putting on the ground. It was a use of less than deadly force in a situation where the officers were trying to get control over a potentially dangerous situation. The fact that the situation escalated immediately after the tasing likely also convinced the jury that the officers' fears were not unfounded. Because the officers did not exhibit reckless disregard for Buchanan's safety, they are immune from suit on assault and battery under Mississippi law.

Buchanan has also included in his Complaint a charge of civil conspiracy, claiming:

> On the date in question the Defendants, acting in concert with one another entered into an agreement, expressly or by implication through their joint participation in the tasing and shooting of Mr. Buchanan engaged in conduct that was wrongful, intentional, willful and wanton and designed to inflict upon Mr. Buchanan certain harm, suffering and pain the likes of which can be compared only to episodes of barbaric torture.

Under Mississippi law, a civil conspiracy requires an agreement among the co-conspirators to accomplish an unlawful purpose, or to accomplish a lawful purpose in an unlawful manner. *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004); *Perkins v. Wal-Mart Stores, Inc.*, 46 So. 3d 839, 846 (Miss. Ct. App. 2010). Where there is no conspiracy or no unlawful purpose, the claim fails. *Id*. The Court having found that the actions of the Defendants were not unlawful, there can be no civil conspiracy under Mississippi law. Moreover, even if there had been an unlawful purpose, or a lawful purpose accomplished in an unlawful manner, the evidence of an agreement among the parties is lacking in veracity and

substance. That evidence consisted of deposition testimony from the two suspects who were being transported by Brandt, Podlin, and Wuest on the night of the incident. One of them, Richard Weir, testified:

> Q. Now, during that time, during that ride before y'all actually arrived there at the Burger King, do you recall the officers saying anything or talking about anything?
>
> A. Yeah. They was talking about what kind of weapons they had and – you know, I guess personal weapons. I guess stuff like that, that kind of, you know, made me feel very uncomfortable, the way they was talking. I can't – like I say, it's been a while. I can't remember, you know, every word that was said. I remember they was talking about, I guess, their personal weapons and stuff like that that they had.

The other suspect, Devaria Smith recounted the officers' conversation as follows, "So we rode. And as we was riding, you know, the three officers, you know, they was talking about going to the gun range, trying out their new weapons and things of that nature. So that was – it was kind of strange to me, too." The fact that the officers were talking about their weapons, particularly if they were talking about their personal weapons, does not rise to the level needed to support a claim that the officers made an express or implied agreement to tase or shoot Buchanan. *Gallagher*, 887 So. 2d at 786-87. That conversation would not, in any event, implicate any of the other Defendants who were not in the vehicle. No reasonable juror could extrapolate from this brief conversation a meeting of the minds to tase or shoot Buchanan, whom Defendants saw afterward on the side of the road. The civil conspiracy claim should be dismissed.

Plaintiff also has a claim for outrage, or intentional infliction of emotional distress. In Mississippi, such a claim focuses on the defendant's conduct, rather than the plaintiff's emotional condition. *Perkins*, 46 So. 2d at 847. The conduct must be extreme; thus, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001). Here, the conduct of the officers in tasing and shooting Buchanan have been found by the Court to be justified under the circumstances, or, at least, not subject to constitutional scrutiny. Thus, their behavior could not have been so extreme as to have intentionally inflicted emotional distress. In any event, the Court has already found that Defendants are immunized under the Mississippi Torts Claim Act from liability, as the officers did not act in reckless disregard of Buchanan's safety. For these reasons, Plaintiff cannot recover on her theories of outrage and intentional infliction of emotional distress.

Plaintiff's final state law claim is for slander and slander per se. In support of that claim, she states:

> The Defendants, Chief Alan Weatherford and other unknown officers of the City of Gulfport Police Department, made certain false, slanderous and defamatory statements to the media, the general public and to medical personnel transporting the injured, Robert L. Buchanan, to the emergency room for treatment of his injuries sustained at the hands of the Defendants. The statements regarding the Plaintiff, being on "drugs" were wholly false and the Defendants making these statement knew or reasonably should have known that the statements were false and untrue at the time they were made.

Police Chief Alan Weatherford, Mayor Brent Warr, City Council President Gary Hollimon, and Chief Administrative Officer John Kelly have moved for summary

judgment on this issue, arguing, "These allegations have no factual support and are completely baseless."  Plaintiff did not respond to this argument, nor has she put forward any evidence supporting her claim that these statements were made.  For these reasons, her slander claim should be dismissed.

Both the state court conviction of assault and the undisputed facts of this case demonstrate that Buchanan cannot succeed on either his state or federal claims.  His § 1983 claims based on excessive force – both as to the shooting and the tasing – are barred by the *Heck* doctrine.  Alternatively, neither amounted to excessive force as it is defined in federal law, and the tasing was not a circumstance where no reasonable official could have debated that it was unconstitutional.  His deliberate indifference and breach of non-delegable fiduciary duty claims are completely unsupported by the undisputed facts of this case.  Buchanan's assault and battery claims with regard to the shooting are barred by the Mississippi Tort Claims Act, as he was engaged in criminal conduct at the time.  With regard to the tasing, the officers and other Defendants are immune from suit under state law because the undisputed facts show that the tasing was not in reckless disregard of Buchanan's safety.  Buchanan's claim of intentional infliction of emotional distress fails for the same reason.  Finally, Buchanan has offered insufficient evidence to support his claim of civil conspiracy and no evidence whatsoever to support his claim of slander.  For these reasons, his claims against the individual officers fail, and there is no predicate wrongdoing on which to implicate the municipal defendants.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the following Motions are **GRANTED**:

1.  Motion for Partial Summary Judgment on the Issue of Liability of Defendants Podlin, Wuest, and Stachura as to the Section 1983 and Pendent State Law Claims [Doc. #279];

2.  Motion for Partial Summary Judgment on the Issue of Liability of Defendants Brandt and Petersen in Their Individual Capacities and Pendent State Law Claims [Doc. #281];

3.  Motion for Partial Summary Judgment on the Claim for Punitive Damages of Defendants Podlin, Wuest, Stachura, Brandt, and Petersen in Their Individual Capacities [Doc. #283]; and

4.  Motion to Dismiss pursuant to Fed. R. Civ. P. 56 or Other Grounds of Defendants Weatherford, Warr, Hollimon, and Kelly [Doc. #285].

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this action is hereby **dismissed**. A separate final judgment dismissing this action shall be entered in accordance with FED. R. CIV. P. 58.

**SO ORDERED AND ADJUDGED** this the 25th day of May, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE