# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
June 4, 2013

No. 12-60496

Lyle W. Cayce
Clerk

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
AUG 1 6 2013
BY_____
J.T. NOBLIN, CLERK
_____DEPUTY

LYDIA BUCHANAN

Plaintiff - Appellant

v.

GULFPORT POLICE DEPARTMENT; CITY OF GULFPORT; MAYOR BRENT WARR, officially and in his individual capacity; CHIEF ALAN WEATHERFORD, officially and in his individual capacity; GARY HOLLIMON, City Council President, officially and in his individual capacity; JOHN KELLY, Chief Administrative Officer, City of Gulfport, officially and in his individual capacity; DETECTIVE LIEUTENANT CRAIG PETERSON, officially and in his individual capacity; OFFICER PAUL PODLIN, officially and in his individual capacity; OFFICER JOSEPH WUEST, officially and in his individual capacity; OFFICER JASON BRANT, officially and in his individual capacity; OFFICER RYAN STACHURA, officially and in his individual capacity; JOHN AND JANE DOES, A-Z, also in their official and individual capacities

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:08-CV-1299

No. 12-60496

Before STEWART, Chief Judge, and BARKSDALE and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Lydia Buchanan, conservator of the person and estate of Robert Lee Buchanan (Buchanan), appeals from the final judgment dismissing the numerous federal and state-law claims in this action against numerous Gulfport, Mississippi, police officers, city officials, and entities (Defendants). At issue, however, is only the adverse summary judgment for excessive-force claims against three police officers, filed pursuant to 42 U.S.C. § 1983. Re-stated, although the complaint raised numerous other claims under both federal and state law, all of which were dismissed pursuant to Defendants' summary-judgment motions, the dismissal of those other claims is not challenged on appeal. AFFIRMED.

## I.

In the late evening hours of 5 July 2007, Gulfport Police Officers Podlin, Brandt, and Wuest were transporting prisoners in an unmarked police vehicle. At an intersection in Gulfport, the Officers observed Buchanan standing on the curb and swinging a baseball bat at passing vehicles. While Officer Brandt remained in the vehicle with the prisoners, Officers Podlin and Wuest walked toward Buchanan to investigate. The Officers wore polo shirts with sewn-on cloth police badges; Officer Podlin drew his taser and approached Buchanan, while Officer Wuest drew his service pistol to provide cover.

With his taser pointed toward Buchanan, Officer Podlin ordered him several times to drop the bat and threatened to tase him if he refused to do so.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

During this exchange, Officer Stachura arrived in a marked police vehicle in response to Officer Brandt's radio call for a marked vehicle. Officer Stachura drew his taser upon observing Buchanan's continuing failure to comply with Officer Podlin's commands. Shortly after Officer Stachura's arrival, however, Buchanan finally dropped the bat.

Officers Podlin's and Stachura's tasers incorporated video cameras. Officer Podlin's taser camera began recording while he was ordering Buchanan to drop the bat. The video from that camera depicts Officer Podlin's five times ordering Buchanan to drop the bat, and threatening to tase Buchanan if he failed to comply. Officer Stachura's taser camera began recording just as Buchanan was placing the bat on the ground, and recorded the subsequent events described below.

After Buchanan released the bat, Officer Podlin ordered Buchanan to step away from it. Buchanan was noncompliant; instead, he leaned slightly toward the bat, as if to pick it up. Officer Podlin tased Buchanan in the chest, but he was not subdued. He pulled the taser leads out of his body, which prompted Officer Stachura to also tase him in an attempt to subdue him. This second tasing also failed to subdue Buchanan; he again removed the leads and began moving rapidly. He picked up the bat, raised it above his head, and charged at Officer Podlin.

In response, Officers Podlin and Wuest fired their pistols at Buchanan; he was hit in the abdomen. Medics were called to the scene and took Buchanan to the hospital. As noted, most of the incident was recorded by the tasers' video cameras.

Buchanan was charged with disorderly conduct for swinging the bat at passing traffic. MISS. CODE ANN. § 97-35-7(1). The Gulfport Municipal Court

entered judgment against him and fined him $336.00; the judgment was later overturned for procedural reasons.

More germane to this appeal, and as discussed in *Buchanan v. State*, 84 So. 3d 812 (Miss. Ct. App. 2011) (en banc), Buchanan was also indicted for aggravated assault on a peace officer. MISS. CODE ANN. § 97-3-7(2)(b). At his state-court trial in 2010, the jury was instructed on the elements of the charged offense, as well as the lesser-included offenses of simple assault on a peace officer and misdemeanor simple assault, in that order. *Buchanan*, 84 So. 3d at 814. It was further instructed not to consider any lesser offense unless it failed to find Buchanan guilty of the previous offense. The jury found Buchanan guilty of misdemeanor simple assault, for which he received a six-month suspended sentence. *Id.* In an en banc opinion, Mississippi's intermediate appellate court affirmed the conviction and sentence. *Id.* at 819.

Buchanan filed this action in October 2008, prior to his criminal trial in 2010 (Lydia Buchanan was substituted as plaintiff in October 2011). Named as defendants were: Officers Podlin, Wuest, Brandt (misspelled as "Brant"), and Stachura; the Gulfport police chief; several Gulfport city officials; the City of Gulfport and its police department; and John and Jane Does A - Z. Buchanan claimed: excessive force for tasing and for shooting him, deliberate indifference to medical needs, and related supervisor liability, all pursuant to 42 U.S.C. § 1983; conspiracy to interfere with civil rights, pursuant to 42 U.S.C. § 1985; failure to prevent conspiracy, pursuant to 42 U.S.C. § 1986; failure to adequately train and supervise officers, negligent hiring and retention, and failure to discipline, all resulting in the claimed federal-law violations; and state-law claims for battery, assault, civil conspiracy, breach of a non-delegable fiduciary duty, the common-law tort of outrage, intentional infliction of emotional distress, and slander.

No. 12-60496

In February 2011, the district court granted summary judgment against the conspiracy and failure-to-prevent-conspiracy claims, which were pursuant to 42 U.S.C. §§ 1985 and 1986, respectively. *Buchanan v. Gulfport Police Dept.*, No. 1:08CV1299-LG-RHW, Order Partially Granting Mot. Summ. J. at 12 (S.D. Miss. 3 Feb. 2011). In May 2012, the court granted summary judgment against the remaining claims, *Buchanan v. Gulfport Police Dept.*, No. 1:08CV1299-LG-RHW, 2012 WL 1906523 (S.D. Miss. 25 May 2012), and entered a final judgment that day, dismissing this action.

Regarding the excessive-force claims, the court ruled in its comprehensive and well-reasoned May 2012 opinion that a finding of excessive force against the three Officers (the Officers) for either the tasing or the shooting would necessarily call into question Buchanan's simple-assault conviction. It reasoned that, by his having been found guilty in the 2010 criminal trial, the jury had determined implicitly that Buchanan was uncooperative with the Officers prior to being tased, and he had threatened them with serious harm by charging them with the upraised bat prior to being shot. Therefore, the court ruled that, pursuant to the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (no recovery for excessive force where such recovery would call into question a valid criminal conviction), Buchanan's excessive-force claims were barred. In the alternative, the court ruled the Officers, in their individual capacity, were entitled to qualified immunity against the excessive-force claims.

## II.

Summary judgment is reviewed *de novo*, viewing the evidence in the light most favorable to the nonmovant. *E.g.*, *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a).

5

A dispute is "genuine" if "the evidence supporting its resolution in favor of the party opposing summary judgment . . . would be sufficient to support a verdict in favor of that party". *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (quoting *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986)). A dispute is not genuine if "the evidence offered by both the moving and opposing parties would support only one conclusion", even if all the nonmovant's evidence was fully credited. *Id.* (quoting *Prof'l Managers*, 799 F.2d at 222).

A fact is "material" if it "might affect the outcome of the suit under the governing law"; it is not material, and therefore does not affect the summary-judgment analysis, if it is "irrelevant or unnecessary". *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Here, two factors alter the normal procedure for summary judgment. First, a qualified-immunity defense alters the summary-judgment burden: "[o]nce a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available". *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010). Second, "[a]lthough we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene"; in other words, "[a] court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape". *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (internal quotation marks and citation omitted).

### A.

For the reasons that follow, only the excessive-force claims are at issue on appeal. Re-stated, although numerous other claims were raised in district court,

they are not raised here. Along that line, the district court fully analyzed each claim before dismissing it on summary judgment. This is reflected in the final judgment's dismissing this action.

In its February 2011 order, the court dismissed the 42 U.S.C. § 1985 claim for conspiracy to interfere with civil rights because Buchanan failed to plead adequately to state the claim. *Buchanan v. Gulfport*, Order Partially Granting Mot. Summ. J. at 5-7. The 42 U.S.C. § 1986 claim for failure to prevent the conspiracy was dismissed at the same time, because "the existence of a Section 1985 conspiracy is an element of the Section 1986 claim". *Id.* at 7.

In its May 2012 opinion, after addressing the excessive-force claims, the district court addressed the remaining claims. It granted summary judgment against the 42 U.S.C. § 1983 claim for deliberate indifference to medical needs and related supervisor liability because no evidence had been presented to refute the Officers' evidence that medical assistance arrived on the scene within two minutes of Buchanan's being shot, and he was being treated in the hospital less than half an hour later. *Buchanan v. Gulfport*, 2012 WL 1906523 at *11-12. Because all of the federal claims against the Officers had been dismissed, the court also dismissed the claims against the city, the police department, the police chief, and other city officials for failure to train and supervise, negligent hiring and retention, and failure to discipline. *Id.* at *12. Citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the court explained: "Where there is no underlying constitutional violation, there can be no municipal liability". *Buchanan v. Gulfport*, 2012 WL 1906523 at *12.

The district court then analyzed the state-law claims. It ruled the Officers did not exhibit reckless disregard for Buchanan's safety, making them immune from suit for assault and battery under the Mississippi Tort Claims Act. *Id.* at *12-14. It held the civil conspiracy claim was barred, *inter alia*, because

Defendants' underlying actions were not unlawful. *Id.* at *14. Because the claim for breach of a non-delegable fiduciary duty arose from the same allegations as those for the rejected claim for deliberate indifference to medical needs, the court granted summary judgment against it for lack of a genuine dispute of material fact. *Id.* at *11-12. The court explained that Mississippi law considers Buchanan's common-law-tort-of-outrage claim equivalent to his intentional-infliction-of-emotional-distress claim, and dismissed both claims because the Officers' actions were found justified under the circumstances and all Defendants were immunized by the Mississippi Torts Claims Act. *Id.* at *12 n.6, *15. Finally, the court dismissed the claim for slander, ruling Buchanan had failed to present any evidence that Defendants made defamatory statements. *Id.* at *15.

As stated *supra*, Buchanan fails to challenge these non-excessive-force-claims rulings. Therefore, the underlying claims have been abandoned. *E.g.*, *MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 895 (5th Cir. 1995). In other words, because the excessive-force rulings are the only ones challenged and briefed on appeal, the underlying excessive-force claims are the only ones at issue here. *Id.*; FED. R. APP. P. 28(a)(5) (appellant's brief must state issues presented for review).

## B.

"We may affirm summary judgment on any basis raised [in district court] and supported by the record." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009). Because the Officers are entitled to qualified immunity for the excessive-force claims for the tasing and the shooting, we need not address whether the *Heck* doctrine also bars those claims.

Qualified immunity serves to protect public officials, in their individual capacity, "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It balances the need to hold officials accountable when they act irresponsibly with the need to shield them from liability when they perform their duties reasonably. *Id.* "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability'", it is important to resolve the issue at the earliest possible stage of litigation. *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The well-established qualified-immunity analysis has two prongs. To defeat summary judgment, Buchanan must show genuine disputes of material fact for: whether the Officers violated his constitutional (Fourth Amendment) right against excessive force; and whether their actions were objectively unreasonable in the light of then clearly-established law. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Courts may exercise their discretion in determining which of the two prongs to address first. *Pearson*, 555 U.S. at 236. Because Buchanan fails to show a genuine dispute of material fact for whether he suffered a constitutional violation, the second prong of the analysis need not be addressed.

For a Fourth Amendment excessive-force violation, plaintiff must show: "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable". *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996) (quotation marks omitted). The third factor, objective reasonableness, is determined by balancing "the amount of force used against the need for that force", *id.* at 434, taking the perspective of a reasonable officer on the scene without "the 20/20 vision of hindsight", *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Buchanan contends there are genuine disputes of material fact for whether the Officers' actions constituted excessive force, both when they tased him and when they shot him. In that regard, Buchanan asserts: the Officers tased him despite his having committed no crime up to that point; and it is disputed whether he raised the bat over his head and charged Officer Podlin before being shot.

These contentions, however, are foreclosed by the jury's findings in Buchanan's criminal trial: where a party has a full and fair opportunity to litigate an issue in state court, even if it is a "state proceeding in which he would rather not have been engaged at all", the doctrine of collateral estoppel bars re-litigation of the issue in federal court on a claim pursuant to 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90, 103-05 (1980). The district court noted correctly that Buchanan had the requisite full and fair opportunity to litigate these fact issues in his criminal trial. *Buchanan v. Gulfport*, 2012 WL 1906523 at *6. He was represented by the same attorneys who represent him in this action, and he had ample incentive to defend the criminal charges against him, both to avoid a criminal penalty and to preserve his claims in this action. *Id.* (Buchanan does not brief collateral estoppel *vel non*, even though the point was addressed both by the district court and in the brief here of the Officers and two other defendants.)

Pursuant to *Allen*, when a federal court applies collateral estoppel to a claim under § 1983, it "must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation". *Hernandez v. City of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983). In Mississippi, collateral estoppel bars re-litigation in a civil action of facts found beyond a reasonable doubt in an earlier criminal matter. *Jordan v. McKenna*, 573 So. 2d 1371, 1376 (Miss. 1990). As discussed *infra*, by finding Buchanan guilty, the jury in his criminal trial

necessarily found: the Officers were justified in tasing him; and he charged Officer Podlin with the bat in an attempt to cause serious bodily injury. Under the first prong of qualified-immunity analysis, these facts, established under collateral estoppel, compel the Officers' being entitled to qualified immunity, as discussed below.

### 1.

Concerning the tasing, the jury in the criminal trial was instructed: if it found Buchanan attacked Officer Podlin with the bat, but did so in resisting an unlawful arrest (*i.e.*, the tasing was unjustified), it should find Buchanan not guilty; and, to find him guilty of misdemeanor simple assault, it must find he attempted to cause bodily harm to Officer Podlin "not in necessary self defense". Because the jury found Buchanan guilty of misdemeanor simple assault, it necessarily found, beyond a reasonable doubt, that Buchanan was not suffering an unlawful arrest that necessitated self defense when he was tased. Because the jury found the Officers' tasing him was part of a *lawful* arrest that did not support a claim of self defense, it follows that the tasing was neither "clearly excessive to the need", nor "objectively unreasonable", as discussed *infra*. *Ikerd*, 101 F.3d at 434.

Along that line, even if collateral estoppel did not apply, review of the taser videos would compel the same conclusion. They show Officer Podlin warned Buchanan repeatedly that he would be tased if he failed to comply with instructions. Nevertheless, after finally placing the bat on the ground, he leaned toward it, as if to pick it up, rather than walking away from it as Officer Podlin had instructed. These multiple warnings and Buchanan's repeated failure to comply with police instructions would be enough to overcome Buchanan's claim of excessive force for the tasing.

Applying the three-part excessive-force test to the facts surrounding the tasing, it is arguable that Buchanan has not even created a genuine dispute of material fact for the first requirement: that he suffer an injury. *Ikerd*, 101 F.3d at 433. As the Mississippi intermediate appellate court acknowledged, and as the videos show, Buchanan was not subdued by the tasing. *Buchanan v. State*, 84 So. 3d at 813-14. Rather, he was able twice to remove the taser leads from his body, pick up the bat, and charge Officer Podlin. *Id.* at 814. Therefore, to the extent Buchanan suffered any injury as a result of the tasing, it was *de minimis* and arguably cannot support a claim of excessive force. *See Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir. 1999).

Even assuming Buchanan has created a genuine dispute of material fact for whether he suffered an injury from being tased, he has not created such a dispute for whether the tasing met the other two requirements for an excessive-force claim: that the injury result from force "that was clearly excessive to the need"; and, such excessiveness was "objectively unreasonable". *Ikerd*, 101 F.3d at 434. The Officers had observed Buchanan swinging a baseball bat toward passing traffic, and their only order to him was to place the bat on the ground and walk away from it. Given his failure to comply with these orders, and his choice to lean toward the bat, instead of walking away from it, Buchanan has not created a genuine dispute of material fact for whether Officer Podlin was acting in a manner that was "clearly excessive to the need" and "objectively unreasonable" when he attempted to subdue Buchanan by tasing him. *See Ikerd*, 101 F.3d at 434.

Moreover, when Officer Podlin's taser failed to subdue Buchanan, Officer Stachura tased him. Buchanan has not created the requisite genuine dispute for whether this second tasing was excessive to the need or objectively unreasonable.

Several other circuits have determined similarly that, where a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their tasers to subdue him. *See, e.g., Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 732-33 (4th Cir. 2013); *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *McKenney v. Harrison*, 635 F.3d 354, 357-58 (8th Cir. 2011). For example, in *McKenney*, 635 F.3d at 357-58, two officers were executing an arrest warrant on a suspect wanted for several misdemeanors. The suspect made a sudden move toward a second-floor window, despite being warned he would be tased if he attempted to escape. *Id.* at 360. Interpreting this movement as an attempt to evade arrest, one of the officers tased the suspect. *Id.* The suspect continued out the window, fell to the sidewalk, and later died of his injuries. *Id.* at 358. Notwithstanding the tragic result, the fact that the officers had no reason to believe the suspect was armed, and the relatively non-serious nature of the underlying offenses, the Eighth Circuit held the tasing was a reasonable attempt to subdue a noncompliant suspect. *Id.* at 360.

As in *McKenney*, Officers Podlin and Stachura were required to make split-second decisions in a tense situation. As stated, viewing the incident from the requisite perspective of a reasonable officer on the scene, Buchanan has failed to create the requisite genuine dispute for whether the two Officers' tasing him in order to subdue him were either excessive to the need or objectively unreasonable. *See Graham*, 490 U.S. at 396.

### 2.

Concerning the shooting, Buchanan's adverse criminal verdict forecloses any contention that he did not charge Officer Podlin with the bat raised over his head. The jury found him guilty of misdemeanor assault after being instructed that, to do so, it must find Buchanan "knowingly, purposely or recklessly []

Case 1:08-cv-01299-LG-RHW Document 394 Filed 08/16/13 Page 14 of 14

No. 12-60496

attempt[ed] to cause bodily injury to [Officer] Podlin". *Buchanan v. State*, 84 So. 3d at 816. The only portion of the incident that could possibly fit that description was Buchanan's charging Officer Podlin with the bat raised over his head; therefore, the jury found beyond a reasonable doubt that Buchanan committed that act. *See id.* at 817. For the reasons presented *supra*, Buchanan cannot re-litigate the fact question of whether he charged Officer Podlin with the bat. *Jordan*, 573 So. 2d at 1376.

With that fact established, Buchanan has failed to create a genuine dispute of material fact for the excessive-force element of whether Officers Podlin and Wuest acted objectively unreasonably when they shot Buchanan. *See Ikerd*, 101 F.3d at 434. "Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). Buchanan has failed to create the requisite genuine dispute for whether his attacking Officer Podlin with a metal baseball bat did not give the Officer a reasonable belief that Buchanan posed such a threat.

Once again viewing the situation from the requisite perspective of a reasonable officer at the scene, forced to make a split-second decision, Buchanan has failed to create a genuine dispute of material fact for whether Officer Podlin was not justified in believing Buchanan posed a threat of serious harm and for whether his use of deadly force was unreasonable. For the same reason, Buchanan has failed to create the requisite genuine dispute for whether Officer Wuest was unreasonable in simultaneously shooting Buchanan; as noted, deadly force is permitted if an officer reasonably perceives a threat of serious harm to himself *or others. Id.*

### III.

For the foregoing reasons, the judgment is AFFIRMED.